## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FIRST ADVANTAGE ENTERPRISE
SCREENING CORPORATION,

              Plaintiff,

      v.

INTERNATIONAL GOLDEN FOODS, LLC,

              Defendant.

Civil Case No. 22-255 (CKK)

## MEMORANDUM OPINION
(June 17, 2022)

Pending before the Court is Defendant International Golden Foods, LLC's [10] Motion to

Transfer, in which Defendant seeks to transfer this case to the Alexandria Division of the United

States District Court for the Eastern District of Virginia.  Plaintiff First Advantage Enterprise

Screening Corporation opposes Defendant's motion.  Upon review of the pleadings,[1] the relevant

legal authorities, and the record as a whole, the Court will **GRANT** Defendant's [10] motion to

transfer and **ORDER** that this case be transferred to the Alexandria Division of the U.S. District

Court for the Eastern District of Virginia.

## I.  BACKGROUND

Plaintiff First Advantage Enterprise Screening Corporation ("Plaintiff") filed its Complaint

in this action on February 1, 2022.  *See* Compl., ECF No. 1.  Therein, Plaintiff alleges that it

provided background screening and tax consulting services to Defendant International Golden

---

[1] The Court's consideration has focused on:
- Defendant's Memorandum in Support of Motion to Transfer ("Def.'s Mot."), ECF No. 10;
- Plaintiff's Memorandum of Points & Authorities in Opposition to Defendant's Motion to Transfer ("Pl.'s Opp'n"), ECF No. 11; and
- Defendant's Reply in Support of Motion to Transfer ("Def.'s Reply"), ECF No. 12.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

Foods, LLC ("Defendant"), pursuant to a Vendor Services Agreement and various amendments thereto. *Id.* ¶¶ 12, 14–20. Plaintiff alleges that in May 2021, it entered into a "Schedule A Amendment" with Defendant in which Plaintiff agreed to provide services that would assist Defendant in applying for Employee Retention Tax Credits ("ERTCs")—made available by the CARES Act to certain businesses financially affected by the COVID-19 pandemic. *Id.* ¶¶ 19–20. According to Plaintiff, Defendant was required to pay a 12% fee on "all ERTCs calculated." *Id.* ¶ 20. Based on a calculation of $5,575,227.08 in total ERTCs, Plaintiff sent Defendant an invoice on September 21, 2021 for fees in the amount of $669,927.25. *Id.* ¶¶ 21, 23. Plaintiff claims that an applicable contract provision required Defendant to make its payment "within thirty (30) days [of] receipt of such invoice. Amounts not paid after forty-five (45) days when due shall accrue interest at a rate of 15% per annum provided however that [Defendant's] total liability for interest pursuant to this [section] shall not exceed the limits imposed by applicable law." *Id.* ¶ 22. Plaintiff alleges that one week before Defendant's payment was due, Defendant sent a "Termination Notice" to Plaintiff, claiming that Plaintiff had "failed to accurately calculate the ERTC." *Id.* ¶ 25. Plaintiff claims that this notice was not timely under the parties' contracts, and seeks compensatory damages plus interest. *Id.* ¶ 38.

Plaintiff is a Delaware corporation with its principal place of business in Georgia. Compl. ¶ 7; Def.'s Mot. at 1. Defendant is a "District of Columbia entity with its principal place of business in Virginia." Compl. ¶ 8; Def.'s Mot. at 1. Defendant's pending motion seeks to transfer this action to the Eastern District of Virginia "on the grounds that Plaintiff has no connection to the District of Columbia and the claim arose in Virginia." Def.'s Mot. at 1

## II.  LEGAL STANDARD

A court may transfer an action to any other district where it might have been brought "[f]or the convenience of the parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) "is to prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public from unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation and quotation marks omitted).  District courts have discretion to transfer a case based on an "individualized case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Defendants seeking transfer must first establish that the plaintiff could have brought suit in the proposed transferee court.  *Treppel v. Reason*, 793 F. Supp. 2d 429, 435 (D.D.C. 2011).  The movant also bears the "heavy burden of establishing that [the plaintiff's] choice of forum is inappropriate."  *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (internal quotation marks omitted).  To satisfy this burden, defendants seeking transfer "must show that considerations of convenience and the interest of justice weigh in favor of transfer."  *Jalloh v. Underwood*, 300 F. Supp. 2d 151, 155 (D.D.C. 2018) (internal citations omitted).  "To determine whether 'considerations of convenience and the interests of justice weigh in favor of a transfer,' courts consider several private-interest factors, including: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof."  *Beall v. Edwards Lifesciences LLC*, 310 F. Supp. 3d 97, 103 (D.D.C. 2018) (internal citations omitted).  Courts also consider whether certain public-interest factors weigh in favor of transfer, including

"(1) the transferee's familiarity with the governing laws, (2) the relative congestion of each court, and (3) the local interest in deciding local controversies at home."  *Id.*

## III.  DISCUSSION

The parties do not dispute the threshold requirement of § 1404(a); they agree that this action "might have been brought" in the Eastern District of Virginia.  *See* Def.'s Mot. at 4–5; Pl.'s Opp'n at 3.  Defendant, however, contends that the balance of public and private interest factors weighs in favor of transferring this action to the Eastern District of Virginia.  Considering these factors, the Court concludes that Defendant has demonstrated that transfer is appropriate, and so shall **GRANT** Defendant's motion to transfer.

### A.  Private Interest Factors

#### 1.   The Parties' Choice of Forum and Where the Claims Arose

As to the first two private interest factors, Plaintiff's chosen forum is the District of Columbia, whereas Defendant's is the Eastern District of Virginia.  "Generally, a plaintiff's choice of forum is given substantial deference, and therefore, the movant requesting a transfer of venue 'bears a heavy burden of establishing that the plaintiff's choice of forum is inappropriate.'" *Smith v. Yeager*, 234 F. Supp. 3d 50, 58 (D.D.C. 2017) (quoting *Thayer*, 196 F. Supp. 2d at 31).  However, the ordinary "substantial deference" accorded to a plaintiff's choice of forum is "substantially lessened when the plaintiff is a 'foreigner' to the forum," or where there is a "lack of meaningful ties between the controversy, the parties, and the forum."  *Renchard v. Prince William Marine Sales, Inc.*, 28 F. Supp. 3d 1, 11 (D.D.C. 2014) (internal citations and quotation marks omitted).  Therefore, the first factor (the plaintiff's choice of forum) and the third factor (where the claim arose) "are often conflated, since the analysis of where the claim arose necessarily involves examining the ties, or lack thereof, between the parties, the controversy, and the forum."  *Id.*

Here, Plaintiff is not domiciled in the District of Columbia; it is a Delaware entity with its principal place of business in Georgia.  Compl. ¶ 7.  Defendant contends, therefore, that Plaintiff's chosen forum should not be afforded deference because Plaintiff is not a resident of this jurisdiction.  Plaintiff responds that its claims nonetheless have "meaningful ties" to its chosen forum because Defendant is a "District of Columbia entity" and because its claims involve "Defendant's failure to pay fees for tax services rendered by First Advantage involving Defendant's McDonald's franchises, [four] of which are located in the District of Columbia."  Pl.'s Opp'n at 6 (citing Declaration of Rebekah Braselton-Denmark ("Denmark Decl.") ¶ 7, ECF No. 11-1).  Defendant counters that Plaintiff's "collect[ion]" of "payroll" information from four restaurants located in the District of Columbia—out of seventeen total restaurants located across Maryland, Virginia, and the District of Columbia for which Plaintiff provided services—does not amount to a "meaningful tie" to this jurisdiction.  Def.'s Reply at 4, 6.  Nor does Defendant's status as a District of Columbia entity because its decisionmakers and place of business are located in Virginia.  *Id.*  The Court agrees with Defendant that the facts relied upon by Plaintiff do not establish a "meaningful" tie to this jurisdiction, and so the Court is not required to give the ordinary "substantial deference" to Plaintiff's choice of forum.  Therefore, the first two factors are in equipoise; Plaintiff prefers the present forum, whereas Defendant prefers the Eastern District of Virginia.

Defendant further contends that Plaintiff's claims "arose" in Virginia.  To determine where a breach of contract claim arose, the Court considers where the contract was agreed to and negotiated, *Katopothis v. Windsor-Mount Joy Mut. Ins. Co.*, Civil Action No. 14-0380 (ABJ), 2014 WL 12929446, at *2 (D.D.C. Nov. 12, 2014) (citing *Paley v. Estate of Ogus*, 20 F. Supp. 2d 83, 93 (D.D.C. 1998)), and where the decision to breach the contract allegedly occurred, *id.* (citing

*Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 97 (D.D.C. 2009)). Defendant contends that, as its officers work in Virginia, the execution of the contract occurred there, as did the decision to allegedly breach the contract. *See* Def.'s Mot. at 6–7. Plaintiff does not dispute either point, but merely argues that these facts alone do not sway this private-interest factor in support of transfer. *See* Pl.'s Opp'n at 7–8. Plaintiff then argues that its claims "arose *in part*" based on work it performed "involving Defendant's franchise located in the District of Columbia." *Id.* at 4 (emphasis added). This point, however, ignores that the applicable contract also provided for Plaintiff to perform services in Virginia. *See id.* at 7 (noting that the "object of the parties' engagement" was for Plaintiff to "perform tax consulting services with regard to Defendant's McDonald's franchises . . . in Virginia, Maryland, and the District of Columbia."). Considering that the performance occurred across multiple jurisdictions, and that Defendant's alleged decision to breach the contract occurred in Virginia, the third private-interest factor leans in favor of transfer.

### 2. *Convenience of the Parties and Witnesses and Ease of Access to Sources of Proof*

The remaining private interest factors— the convenience of the parties, the convenience of the witnesses, or the ease of access to sources of proof—tilt slightly in favor of transfer. "Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 50 (D.D.C. 2005) (quoting *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139 (6th Cir. 1991)). Therefore, for these factors to weigh in favor of transfer, "litigating in the transferee district must not merely shift inconvenience to the plaintiffs, but rather should lead to an overall increase in convenience for the parties." *U.S. ex rel. Westrick . Second Chance Body Armor, Inc.*, 771 F. Supp. 2d 42, 48 (D.D.C. 2011).

Defendant argues that these "convenience" factors support transfer because its representatives and potential witnesses "live and work in Virginia." Def.'s Mot. at 7, 8. Defendant

further contends that, because Plaintiff's witnesses and representatives are not located in either Virginia or the District of Columbia, "traveling to Virginia" would be no less convenient than traveling to the District." Def.'s Mot. at 8. Plaintiff, on other hand, would have to travel regardless of whether this action proceeds in this jurisdiction or in the Eastern District of Virginia.

Because the District of Columbia and the Alexandria Division of the Eastern District of Virginia are "in close proximity," the "convenience of the parties would not be greatly affected" if this case was transferred to a neighboring jurisdiction. *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 4 (D.D.C. 2006). However, despite the close proximity of these jurisdictions, transfer would result in a "net increase" in convenience for the parties, as Defendant's officers, witnesses, and evidence are located in Virginia, whereas Plaintiff's are out-of-state regardless of whether the case proceeds in Washington, D.C. or in Alexandria, Virginia. Though only slightly, these "convenience" factors support transfer.

### B. Public Interest factors

Finally, the Court considers whether certain public interest factors weigh in favor of transfer, including "(1) the transferee's familiarity with the governing laws, (2) the relative congestion of each court, and (3) the local interest in deciding local controversies at home." *Beall*, 310 F. Supp. 3d at 103. As explained below, none of these factors weigh in favor of or against transfer.

The parties do not dispute that Delaware law applies to the contract at issue. Def.'s Mot. at 9; Pl.'s Opp'n at 14. Because the applicable state law is not that of either party's preferred forum, this factor is neutral and does not weigh against or in favor of transfer.

Next, Defendant argues that the "relative congestion" of each court weighs in favor of transfer, noting that, in 2021, the "median time" between filing a complaint and trial in the Eastern

7

Case 1:22-cv-00255-CKK   Document 15   Filed 06/17/22   Page 8 of 9

District of Virginia was 18.2 months, whereas the median time in this jurisdiction was 42.7 months. Def.'s Mot. at 5. Plaintiff responds that the "potential speed of resolution is examined by comparing the median filing times to *disposition* in the courts at issue." Pl.'s Opp'n at 14 (emphasis added) (citing *Smith*, 234 F. Supp. 3d at 59–60); *see also Fed. Housing Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 194 (D.D.C. 2012) ("In this District, potential speed of resolution is examined by comparing the median filing times to disposition in the courts at issue."). Applying that measure, Plaintiff notes that the average "median filing to disposition" in civil cases is approximately one month shorter in this jurisdiction than in the Eastern District of Virginia. *Id.* (citing Def.'s Mot. Exs. 2, 3). Defendant argues in reply that the Court is not confined to considering that single measure of the court's congestion. Def.'s Reply at 8. However, in the case upon which Defendant relies for this proposition, this Court concluded that a "mixed indication" of "which District Court's docket is less congested" did not "weigh in favor of or against transfer." *Foote v. Chu*, 858 F. Supp. 2d 116, 123 (D.D.C. 2012). Even considering the "mixed indications" of congestion cited by the parties here, the Court again concludes that this factor does not weigh in favor or against transfer in light of the minor differences in "median filing to disposition" intervals between the two jurisdictions.

Lastly, to determine whether a controversy is "local in nature," courts consider a "wide variety of factors, including: where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, whether the issue involved federal constitutional issues rather than local property laws or statutes; whether the controversy involved issues of state law, whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official." *Otay Mesa Prop. L.P. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 122, 126 (D.D.C. 2008). Many of these factors are

not at issue here; there are no federal or constitutional issues, the applicable law derives from Delaware (as opposed to Virginia or D.C. law), the controversy has no national significance, and it does not involve any District of Columbia official. Defendant argues that Virginia has a "local interest" in deciding this controversy because "the harm alleged . . . occurred in Virginia," where Defendant made its decisions about performing (or not) the contract. Def.'s Mot. at 10. Plaintiff responds that this factor is, at best, neutral because its claims "involve[ ] of a breach of contract action between two private business entities," have "no effect on the citizens" of either forum, and involves application of Delaware law. Pl.'s Opp'n at 15. Moreover, Plaintiff contends that it did not "feel" the effects of the alleged injury in Virginia (or D.C.), but instead at its out-of-state domiciles. *Id.* at 15–16. The Court agrees that this factor is, at best, neutral.

In sum, none of the "public interest" factors tip the scales in favor of or against transfer.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has demonstrated that the applicable public and private interest factors support transferring this action to the Eastern District of Virginia. Accordingly, the Court **GRANTS** Defendant's [10] Motion to Transfer. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

Date: June 17, 2022